In its Opinion and Award, the majority terminates plaintiff benefits. I respectfully dissent.
In the case at hand, the defendants are paying plaintiff for total disability compensation pursuant to a Full Commission decision filed 13 October 2000 that was subsequently affirmed by the North Carolina Court of Appeals on 5 February 2002. The parties stipulated that plaintiff has been paid total disability compensation since the date of injury, 7 September 1997, and that no physician has released him to return to work. Plaintiff has a wife of nine years and two minor stepchildren. All three are his dependents. Plaintiff was arrested for a probation violation and was incarcerated on 22 January 2003. Plaintiff was released on 8 September 2003. Defendants pursued the Industrial Commission's Form 24 process following the plaintiff's incarceration. The matter at hand is the appeal from an approved Form 24.
In terminating the plaintiff's benefits, the majority relies heavily on Parker v. Union Camp, 108 N.C. App. 85 (1992). It is my opinion that this reliance is misplaced. It is well-established law that following an award of benefits via an Opinion and Award, the plaintiff has a presumption of continuing disability and that the defendant has the burden of rebutting this presumption. Radica v. Carolina Mills, 113 N.C. App. 440
(1994); Watkins v. Motor Lines, 279 N.C. 132 (1971). The North Carolina Supreme Court has "warned against any inclination toward judicial legislation" in the construction of the Worker's Compensation Act. Johnson v. Southern Indus. Constructors,347 N.C. 275 (1982). Given the absence of any statute concerning this incarceration issue the plaintiff's presumption of continuing benefits should stand. Compensation should continue notwithstanding the plaintiff's incarceration. The fact that the legislature acted in N.C. Gen. Stat. § 97-13(c) specifically to exclude prisoners injured as they worked for the state while incarcerated but did not address the situation in the case at bar shows unmistakable intent by the legislature to allow the general provisions of the Act to apply. The dissent in Parker noted this vital point:
 [A]fter it has been determined that an employee is entitled to benefits because of a work-related injury, a change in physical condition is the only basis upon which the Industrial Commission can modify such benefits. See N.C.G.S. 97-47 (1991) (a worker's compensation award can be modified only "on the grounds of a change of condition"); 307 N.C. 99 (1982) ("change of condition" means "a substantial change, after a final award of compensation, of physical capacity to earn and, in some cases, earnings") . . . If a different result is desired by the legislature, then it is up to that body of government, not this court, to enact laws to that effect.
The fact situation in the case at hand is very similar to one in which a worker injured by a compensable injury is encountered with a concurring disabling factor, such as a serious car accident. "Disability" is defined by the Act as "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9). It is well settled that in the case of a car accident that causes serious injury to an already-disabled injured worker, compensation benefits continue notwithstanding the superimposed injuries. This is so because, until proven otherwise, the plaintiff is still entitled to disability compensation for the compensable injury even after a concurring disabling event occurs. Seagraves v. Austin Co.,123 N.C. App. 228 (1996). Only if the plaintiff's physical capacity to earn wages has been affected can the defendants reduce or terminate plaintiff's benefits on a change of condition theory.Grantham v. R.G. Barry Corp., 127 N.C. App. 529 (1997) cert.denied 347 N.C. 671 (1998). Here the plaintiff's physical capacity was not changed by his incarceration. His inability to work predated his arrest. While incarcerated, plaintiff was still physically disabled as a result of his compensable injury. Being incarcerated did not keep him from working, because whether he was incarcerated or not, he still would not have been able to work. Numerous other jurisdictions follow this rationale. In cases in which the plaintiffs are not incarcerated, defendants have the opportunity to terminate benefits by proving that the plaintiff is suitably employed. This is not possible with an incarcerated injured worker, obviously. Therefore, the suitable employment analysis would not be included in the case of an incarcerated injured worker. Rather, a plaintiff in this position could have his benefits terminated merely with a showing that he had the physical capacity to earn wages were he not imprisoned.
Importantly, Parker is not binding in considering the case at hand. The Parker case involved an incarcerated injured worker without dependents. The majority in the Parker case specifically asked the legislature to examine the issue of awarding workers' compensation benefits to the dependants of incarcerated disabled workers, and specifically did not address the issue we have at bar: "Because there are no dependents involved in this case, that issue is not before this Court." Parker v. Union Camp,108 N.C. App. 85, 88 (1992). Further, if workers compensation benefits are terminated in plaintiff's case, the burden of providing for his dependents will no doubt shift to Social Security, Medicaid, and other public assistance programs. In effect, this would shift the burden of paying for industry wreckage from the defendants to the backs of hard pressed taxpayers.
For the above reasons I respectfully dissent.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER