***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representative; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. Plaintiff sustained an admittedly compensable injury on February 13, 2007 to her head. *Page 2 
2. Defendant-Employer, ADP Total Source, is self-insured and Sedgwick CMS is the servicing agent.
3. Defendant-Employer regularly employed three or more employees at all times relevant to this claim and is bound by the provisions of the North Carolina Workers' Compensation Act.
4. Plaintiff's average weekly wage at the time of injury was $688.71 which yields a weekly compensation rate of $459.37.
 *********** EXHIBITS
The following exhibits were admitted into evidence:
 Stipulated Exhibit 1: Pre-Trial Agreement
 Stipulated Exhibit 2: Industrial Commission Forms and Medical Records
 Stipulated Exhibit 3: Payroll Register
 Plaintiff's Exhibit 1: Statement of Unpaid Medical Bills
 Plaintiff's Exhibit 2: Form 25T Statement of Charges for Travel
 Plaintiff's Exhibit 3: Form 25P Statement of Charges for Drugs
 Defendant's Exhibit 1: Job Description for Dental Assistant Position
 Defendant's Exhibit 2: Statement of Temporary Partial Disability Payments
 ***********
The following were received into evidence as:
 DEPOSITIONS
1. Oral deposition of Charles Matthews, M.D., taken July 30, 2008;
2. Oral deposition of Mukesh Kamdar, M.D., taken August 15, 2008; *Page 3 
3. Oral deposition of Patricia K. Naslund, M.D., taken September 2, 2008;
4. Oral deposition of George M. Charron, M.D., taken September 8, 2008.
 ***********
Based upon all of the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, Plaintiff was 28 years old. After graduating from high school, Plaintiff received her dental assistant degree from Wake Technical Community College in 2001.
2. Plaintiff has a history of suffering from headaches, depression, and anxiety. These conditions did not prevent her from working prior to February 2007.
3. Plaintiff's first job after obtaining her dental assistant degree was with a pediatric dental practice for approximately 2 years. Thereafter, Plaintiff started working for Defendant-Employer in February 2006. Between February 2006 and the time of her injury in February 2007, Plaintiff performed her job well and missed no time from work due to headaches or psychological symptoms.
4. On February 13, 2007, Plaintiff suffered an admittedly compensable injury by accident when she hit her head on the arm of an x-ray machine. After hitting her head, Plaintiff began throwing up. The office manager directed Plaintiff to seek medical treatment.
5. Plaintiff was diagnosed with a concussion at WakeMed Hospital. Thereafter, she missed one full day of work and attempted to return to work the next day. Plaintiff was unable to complete work that day due to severe headaches and dizziness, and had to be transported home by her parents. *Page 4 
6. Upon referral, Plaintiff saw Dr. Patricia Naslund, a neurologist with Raleigh Neurology Associates. Dr. Naslund diagnosed Plaintiff with a cervical strain, probably related to the head injury, as well as post-concussive syndrome resulting from hitting her head. She ordered x-rays of Plaintiff's cervical spine and referred her to physical therapy. Plaintiff saw Dr. Naslund a total of four times. At the May 21, 2007 visit Plaintiff reported to Dr. Naslund that her neck pain was ninety percent better but she was still having headaches every day. Dr. Naslund released Plaintiff on July 12, 2007 to full duty work. At the time of release Plaintiff's headache pain had improved and she was having some tingling in her hands and feet as a side effect of the medication she was taking for her headaches.
7. Dr. Naslund opined that Plaintiff's head trauma at work in February 2007 aggravated her pre-existing headache condition.
8. Plaintiff also received treatment from Dr. George M. Charron, a board certified orthopaedic surgeon with Capital Orthopaedic and Sports Medicine Center, beginning May 3, 2007 for persistent neck pain. Dr. Charron diagnosed Plaintiff with a cervical strain and treated her cervical condition with trials of medication, physical therapy, trigger point injections, and epidural steroid injections. Dr. Charron did not provide treatment for Plaintiff's headaches, depression, or anxiety.
9. On November 21, 2007, Dr. Charron released Plaintiff to return to light duty work for four hours a day. Plaintiff returned to work but was unable to lean over patients for the extended periods of time necessary to perform the chair-side assisting duties of the job.
10. Thereafter, on January 30, 2008, Dr. Charron released Plaintiff to full time work with restrictions of no lifting over thirty pounds for six months. Although Plaintiff began working full time, her job remained modified in that she continued to not perform the chair-side *Page 5 
assisting duties of the job. Plaintiff's limited duties included seating patients, counseling patients, and periodically taking x-rays.
11. Plaintiff presented to Dr. Charles Matthews, a neurologist, on October 11, 2007 based upon a referral from the telephonic medical case manager, Margaret Spradling. Ms. Spradling's referral of Plaintiff to Dr. Matthews was based on Dr. Charron's recommendations that Plaintiff see a neurologist.
12. Dr. Matthews was optimistic about being able to help Plaintiff with her current symptoms and related disability. He first needed to perform some tests prior to beginning treatment. On Plaintiff's second visit with Dr. Matthews, she learned that Defendant had denied authorization of the tests and treatment that Dr. Matthews recommended.
13. Plaintiff returned to Dr. Matthews on May 6, 2008. At this visit, Dr. Matthews recommended that Plaintiff be taken out of work and that she "see Occupational Therapy regarding switching professions." Dr. Matthews also executed a Form 28U, "Employee's Request That Compensation Be Reinstated After Unsuccessful Trial Return to Work." After being taken out of work by Dr. Matthews, Plaintiff has not been released to return to work as a dental assistant, nor has she been provided with the vocational rehabilitation recommended by Dr. Matthews. The Full Commission finds as fact that Plaintiff has been incapable of working in any employment since May 6, 2008.
14. Dr. Matthews opined that Plaintiff's head injury at work on February 13, 2007 was more likely than not a significant contributing factor to Plaintiff's headaches for which he provided treatment. *Page 6 
15. The Full Commission gives great weight to the medical opinion testimony of Dr. Naslund and finds as fact that Plaintiff's head trauma at work on February 13, 2007 aggravated her pre-existing headache condition and caused her cervical strain.
16. With regard to Plaintiff's psychological condition, Plaintiff treated with Dr. Mukesh Kamdar, a psychiatrist, for anxiety and depression for several years prior to her accident at work. At the time of the February 2007 work injury, Plaintiff was prescribed Prozac, Xanax and Klonopin. Plaintiff continued to treat with Dr. Kamdar following her injury on February 13, 2007.
17. The Full Commission gives great weight to Dr. Kamdar's medical opinion testimony and finds as fact that Plaintiff's injury by accident on February 13, 2007 exacerbated her pre-existing depression and anxiety. According to Dr. Kamdar, following the work related injury Plaintiff developed severe muscle tension headaches and significant neck pain which would keep her awake at night and during the daytime she would feel fatigued and sedated. Her depression and anxiety worsened. The pain made her depression worse but the fact that she could not function at full capacity and could not work caused secondary depression.
18. Dr. Kamdar also testified that he would offer Plaintiff additional treatment for the exacerbation of her anxiety and depression, including psychotherapy and an examination of her medication options.
19. Plaintiff has not reached maximum medical improvement for the aggravation of her headaches, anxiety, and depression, and there is treatment available which will help effect a cure, provide relief, or lessen the period of her disability. Plaintiff may also benefit from further treatment for her work related cervical condition. *Page 7 
20. The treatment rendered by Dr. Charron, Dr. Naslund, Dr. Matthews, and Dr. Kamdar has been reasonable and necessary to effect a cure, provide relief, or lessen the period of Plaintiff's disability.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with Defendant-Employer on February 13, 2007. N.C. Gen. Stat. § 97-2(6).
2. The evidence of record establishes a causal relationship between Plaintiff's accident of February 13, 2007 and her neck condition and headaches, and thus these conditions are compensable. The evidence of record further establishes that Plaintiff's compensable February 13, 2007 injury by accident aggravated and exacerbated her pre-existing depression and anxiety, and thus these aggravated conditions are compensable. Toler v.Black Decker, 134 N.C. App 695, 518 S.E.2d 547 (1999).
3. As a result of her compensable conditions, Plaintiff has been unable to work since she was taken out of work on May 6, 2008 and is entitled to temporary total disability compensation from May 7, 2008 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
4. Where compensation is owed for an indefinite period of time, and thus it is not possible to shorten the period during which compensation must be paid, the Commission may order a reduction in the amount of the Plaintiff's weekly payments to the Defendant to recoup a *Page 8 
credit. Easton v. J.D. Denson Mowing,173 N.C. App. 439, 620 S.E.2d 201 (2005). In the present case, Defendant is entitled to a credit for overpayment of temporary partial disability compensation, subject to verification and in an amount not to exceed $1,913.12, to be deducted from the lump sum accrued compensation owing to Plaintiff. N.C. Gen. Stat. § 97-42.
5. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of her compensable conditions as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including treatment rendered by Dr. Charron, Dr. Naslund, Dr. Matthews and Dr. Kamdar, and medication prescribed by these physicians, after February 13, 2007. The Commission may at any time upon the request of an employee order a change of treatment and designate other treatment suggested by the injured employee subject to approval of the Commission. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below Defendant shall pay to Plaintiff temporary total disability compensation from May 7, 2008 and continuing until further Order of the Industrial Commission. As much of said compensation as has accrued shall be paid in a lump sum.
2. A credit for overpayment of temporary partial disability compensation, subject to verification and in an amount not to exceed $1,913.12, is approved to be deducted from the lump sum accrued compensation owing to Plaintiff. *Page 9 
3. Dr. Charles Matthews and Dr. Mukesh Kamdar are approved as Plaintiff's treating physicians.
4. Defendant shall pay for medical expenses incurred or to be incurred as a result of Plaintiff's compensable conditions as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including treatment rendered by Dr. Charron, Dr. Naslund, Dr. Matthews and Dr. Kamdar, and medication prescribed by these physicians, after February 13, 2007.
5. Defendant shall pay Plaintiff the required mileage reimbursement for travel to medical appointments, including travel to appointments with Dr. Kamdar after May 7, 2008.
6. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from sums due Plaintiff and paid directly to Plaintiff's counsel payable as follows: 25% of any lump sum shall be deducted and paid directly to Plaintiff's counsel; and thereafter every fourth check due Plaintiff shall be paid directly to Plaintiff's attorney thereafter by deducting every fourth compensation check due Plaintiff.
7. Defendant shall pay expert witness fees as follows: Dr. Mukesh Kamdar in the amount of $875.00; Dr. Patricia Naslund in the amount of $125.00; and Dr. Charles Matthews in the amount of $225.00. A fee for Dr. George Charron was previously approved in the amount of $560.00.
8. Defendant shall pay the costs due the Commission.
This the ___ day of August 2009.
S/___________________ BERNADINE BALLANCE COMMISSIONER *Page 10 
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ LAURA K. MAVRETIC COMMISSIONER